T.C. Memo. 2013-83

UNITED STATES TAX COURT

HOWARD MUI AND PEI YI MUI, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 28155-08.                    Filed March 25, 2013.

<u>Mark C. Heling</u>, <u>Alan F. Segal</u>, and <u>Ryan M. Borgmann</u>, for petitioner

Howard Mui.

<u>Pengtian Ma</u>, for petitioner Pei Yi Mui.

<u>Grubert Roger Markley</u>, <u>Justin D. Scheid</u>, and <u>Andrew Gordon</u>, for

respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

FOLEY, <u>Judge</u>:  The issues for decision, relating to 2002, 2003, and 2004,

are whether petitioners are liable for tax relating to underreported income; whether

**[*2]** petitioners are liable for section 6663(a)[1] fraud, or section 6662(a) accuracy-related, penalties; and whether Pei Yi Mui, pursuant to section 6015, is entitled to relief from joint and several liability.

## FINDINGS OF FACT

In June 2000 Pei Yi Mui immigrated to the United States on a three-month visa. Soon thereafter, she married Howard Mui, they purchased a home, and she applied for permanent resident status. To bolster the application, Mr. Mui added her as a joint account holder to his Pacific Global Bank account (business account).

Mr. Mui was a compulsive gambler. To fund his habit he operated, as a sole proprietorship, Chinatown Communication, which sold international telephone calling cards. Mr. Mui considered this an ideal business because vendors allowed him to receive the cards in bulk and pay two months after receipt. He used calling card sales proceeds (i.e., received prior to the repayment date) to gamble. Under constant pressure to meet vendors' due dates, he typically paid vendors with postdated checks drawn on the business account. When the balance in this account approached zero, he deposited checks drawn on petitioners' Charter One

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[*3] Bank account (personal account). Undaunted by persistent cashflow problems, he borrowed from friends and family when gambling resources dwindled.

Mr. Mui accepted customer payments in cash and deposited these payments into the business account and the personal account. Petitioners closed their personal account in 2004. Mr. Mui would often direct Ms. Mui to sign checks relating to Chinatown Communication, and on several occasions, Mr. Mui signed his wife's name on certain checks. Ms. Mui was not involved in the operation of Chinatown Communication and supported herself with funds from her parents and personal savings.

Mr. Mui had numerous encounters with law enforcement authorities. In 2002 and 2003 he was arrested for domestic violence incidents relating to Ms. Mui, who obtained a restraining order and ultimately separated from him in 2003. Mr. Mui also had problems relating to the sale of cigarettes upon which State and local excise taxes had not been paid (contraband cigarettes). In 1999 the Ohio State Highway Patrol (Highway Patrol) stopped him and seized 1,905 cartons of contraband cigarettes. The Highway Patrol stopped him again in 2002 (i.e., finding no contraband cigarettes in his possession) and 2003 (i.e., finding two packs of contraband cigarettes in his possession). In May 2008 Mr. Mui, after

[*4] pleading guilty to charges relating to the sale of contraband cigarettes in 2005 through 2008, was sentenced to 30 months in prison.

Petitioners timely filed joint 2002, 2003, and 2004 Forms 1040, U.S. Individual Income Tax Return, on which they, respectively, reported $113,135, $134,627, and $138,493 of gross receipts and $67,881, $74,635, and $72,499 of cost of goods sold. The 2003 and 2004 returns were professionally, yet sloppily, prepared. On all three returns petitioners reported that they were entitled to a refund and Mr. Mui signed Ms. Mui's name.

After petitioners' 2002, 2003, and 2004 (years in issue) returns were selected for audit, Mr. Mui, who had limited proficiency in the English language, told the examining revenue agent (first RA) about Chinatown Communication's use of the business account. Mr. Mui further informed the first RA that he had only limited business records and had estimated Chinatown Communication's reported gross receipts and costs of goods sold. The first RA proceeded to perform a bank deposits analysis and reconstruct Chinatown Communication's income. During this process he identified several gambling loans the proceeds of which were deposited into the business account. Prior to completion of the examination, he retired but left workpapers of his analysis.

**[*5]** Revenue Agent Nevita Williams (RA Williams) was assigned to complete the examination. Upon a review of the deposits into the business account, RA Williams noticed that certain checks drawn on the personal account were deposited into the business account. As a result, she determined that an analysis of the personal account was necessary and proceeded to analyze deposits. During the audit Mr. Mui told RA Williams, but did not submit any supporting documentation, that he routinely borrowed money to support his gambling habit. Without scrutiny, RA Williams incorporated the first RA's analysis of the business account into her examination report. She also incorporated her analysis of the personal account.

Petitioners divorced on May 14, 2008. On September 2, 2008, respondent received Ms. Mui's Form 8857, Request for Innocent Spouse Relief, in which she requested relief pursuant to section 6015(b), (c), and (f). Respondent denied Ms. Mui's request. On September 11, 2008, respondent issued petitioners a notice of deficiency, which incorporated RA Williams' examination report. Respondent determined that petitioners had an additional $883,162, $583,564, and $321,346 of gross receipts and $520,356, $320,655, and $138,739 of costs of goods sold relating to 2002, 2003, and 2004, respectively. As a result of these adjustments, respondent determined that petitioners had $362,536, $270,505, and $176,160 of

**[*6]** unreported income relating to 2002, 2003, and 2004, respectively. Respondent further determined that petitioners were liable for section 6663(a) fraud penalties, or, in the alternative, section 6662(a) accuracy-related penalties, relating to these years. On November 19, 2008, petitioners, while residing in Illinois, filed their petition with the Court.

OPINION

I.    The Statutory Notice Is Valid

Petitioners contend that the notice of deficiency lacks a rational foundation and is arbitrary and excessive. We disagree. See Pittman v. Commissioner, 100 F.3d 1308, 1313 (7th Cir. 1996) (holding that a determination is presumed correct if it has a rational foundation and is not arbitrary and excessive), aff'g T.C. Memo. 1995-243; see also Golsen v. Commissioner, 54 T.C. 742, 757 (1970), aff'd, 445 F.2d 985 (10th Cir. 1971). First, respondent's use of the bank deposits method (i.e., to reconstruct petitioners' income) was appropriate because Mr. Mui accepted customer payments in cash, reported estimates on his Federal income tax returns, and failed to maintain records. See sec. 446(b); Petzoldt v. Commissioner, 92 T.C. 661, 686-687 (1989); sec. 1.446-1(a)(4), Income Tax Regs. Second, Mr. Mui readily acknowledges that he owned and operated Chinatown Communication and, thus, was linked to the income-producing activity. See Pittman v.

**[*7]** Commissioner, 100 F.3d at 1313-1314. Third, and most importantly, respondent's determination is solidly grounded on an extensive review of petitioners' activities and bank accounts, which bear a direct relationship to petitioners' tax liabilities. See Zuhone v. Commissioner, 883 F.2d 1317, 1325 (7th Cir. 1989) (stating that the arbitrary and excessive doctrine is a challenge to the Commissioner's determination "on the basis that it bears no factual relationship to the taxpayer's liability"), aff'g T.C. Memo. 1988-142. While we recognize that RA Williams could have performed an independent review of the first RA's analysis and more thoroughly analyzed petitioners' personal account, the notice was not arbitrary or excessive. See id. Indeed, petitioners failed to delineate any inaccuracies in the first RA's analysis. On their tax returns relating to the years in issue petitioners reported gross receipts totaling $386,255 and costs of goods sold totaling $215,015. Respondent determined, however, that petitioners' cumulative understatements of gross receipts and costs of goods sold were $1,788,070 and $979,750, respectively. Although the parties stipulated numerous checks totaling more than $100,000, petitioners did not provide any testimony or credible evidence establishing that these checks related to costs of goods sold or deductible expenses. See Rule 142(a); Goldsmith v. Commissioner, 31 T.C. 56, 62 (1958).

**[\*8]** II.        Petitioners Underreported Their Income

Petitioners have the burden, but failed, to prove that the deposits at issue are not income.[2]  See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986).  We recognize that Mr. Mui borrowed funds, but there is no credible evidence relating to the amount he borrowed.  Moreover, there is insufficient evidence establishing that the deposits were nontaxable or that petitioners are entitled to any cost of goods sold or deductible expenses exceeding the amount respondent allowed.  See Goldsmith v. Commissioner, 31 T.C. at 62.  During cross-examination petitioners presented RA Williams with checks (i.e., totaling more than $90,000), which respondent's determination did not take into account.  Petitioners have not, however, established that these checks related to costs of goods sold.  See id.  Indeed, they failed to offer any testimony or additional documentary evidence relating to these checks, costs of goods sold, or deductible expenses.

III.    Petitioners Are Liable for Accuracy-Related Penalties

Respondent determined, but failed to establish by clear and convincing evidence, that petitioners are liable for fraud penalties pursuant to section 6663(a).

---

[2]Pursuant to sec. 7491(a), the burden of proof may shift to respondent if petitioners introduce credible evidence with respect to any factual issue.  This section is inapplicable because petitioners failed to maintain business records.  See sec. 7491(a)(2).

**[\*9]** See secs. 6663(a), 7454(a); Rule 142(b); Pittman v. Commissioner, 100 F.3d at 1319; Petzoldt v. Commissioner, 92 T.C. at 699.  Respondent's primary contention is that petitioners sold contraband cigarettes during the years in issue and concealed the proceeds to evade tax.  To support his flimsy fraud contention, respondent cites a 1999 traffic stop and contraband cigarette sales in 2005 through 2008--all years not in issue.  The evidence relating to the years in issue (i.e., two Highway Patrol stops of Mr. Mui yielding only two packs of contraband cigarettes) is woefully insufficient.  In addition, petitioners cooperated during the audit.  Respondent asserts that Mr. Mui failed to disclose the personal account when asked through which bank account he conducted business.  Mr. Mui did not reference the personal account because it had previously been closed.  Any misunderstanding relating to this issue was more likely the result of Mr. Mui's limited proficiency in English rather than an intent to mislead respondent.  Finally, respondent contends that Mr. Mui's pattern of cash deposits and failure to maintain business records was "intentionally calculated to make the unreported income harder to detect."  Pressured to make vendor's payment due dates and compelled to assuage his gambling fever, Mr. Mui frantically shuffled money between bank accounts, calling card vendors, and casinos.  Respondent established that Mr. Mui's business practices were imprudent but failed to

**[\*10]** establish that any portion of the underpayment was attributable to fraud or that petitioners intended to evade tax. See secs. 6663(a), 7454(a); Rule 142(b); Pittman v. Commissioner, 100 F.3d at 1319; Petzoldt v. Commissioner, 92 T.C. at 700 (stating that the existence of fraud may not be found under "'circumstances which at the most create only suspicion'" (quoting Davis v. Commissioner, 184 F.2d 86, 87 (10th Cir. 1950), remanding a Memorandum Opinion of this Court)).

Petitioners are not liable for fraud penalties but are liable for accuracy-related penalties. They substantially understated their income tax and failed to exercise due care in the preparation of their tax returns. See secs. 6662(a), (b)(1) and (2), (c), and (d), 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446 (2001); sec. 1.6662-3(b)(1), Income Tax Regs. The 2003 and 2004 returns were prepared by professionals, but petitioners failed to establish or even assert that their preparers had sufficient expertise to justify reliance, that they provided them with necessary and accurate information, or that they relied in good faith on their judgment. See sec. 6664(c)(1); Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002); sec. 1.6664-4(b)(1), Income Tax Regs. Thus, they have not, pursuant to section 6664(c)(1), established reasonable cause for the underpayments or that the returns were prepared in good

**[*11]** faith. Accordingly, we sustain respondent's determination relating to section 6662(a) penalties.

## IV.    Ms. Mui Is Entitled to Innocent Spouse Relief

Married taxpayers may elect to file a joint Federal income tax return. Sec. 6013(a). Each spouse filing the return is jointly and severally liable for the accuracy of the return and the entire tax due. Sec. 6013(d)(3). Pursuant to section 6015(a), however, a taxpayer may seek relief from joint liability. Ms. Mui qualifies for relief pursuant to section 6015(c). As a result, Mr. Mui is liable for the entire tax liability relating to each year in issue. Ms. Mui was divorced from Mr. Mui when she filed her election for relief. In addition, she sought relief less than two years after the first collection activity relating to these liabilities. See sec. 6015(c)(3)(A) and (B). Moreover, Mr. Mui signed Ms. Mui's name on the returns, and, at the time the returns were signed, she did not have actual knowledge of the items giving rise to the deficiencies. See sec. 6015(c)(3)(C); Cheshire v. Commissioner, 115 T.C. 183, 195 (2000) (stating that "the knowledge standard for purposes of section 6015(c)(3)(C) is an actual and clear awareness * * * of the existence of an item which gives rise to the deficiency"), aff'd, 282 F.3d 326 (5th Cir. 2002).

Contentions we have not addressed are irrelevant, moot, or meritless.

**[\*12]** To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.